UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RONNIE DANTE THOMAS,

                Plaintiff,

v.

UNKNOWN STEVENS, et al.,

                Defendants.

_____/

Case No. 1:22-cv-160

Honorable Phillip J. Green

## OPINION

This is a civil rights action brought by a state prisoner.  Plaintiff previously sought and was granted leave to proceed *in forma pauperis*.  (ECF No. 10.)  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge.  (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c).  The Court is required to conduct this initial review prior to the service of the complaint.  *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999).  "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350.  "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted).  That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.  Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal.  *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c).  That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

2

28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint[2] for failure to state

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

[2] Plaintiff has filed a motion to file an amended complaint (ECF No. 7), and he has attached a proposed amended complaint (ECF No. 7-1) to his motion. A party may

a claim.  Further, the Court will deny Plaintiff's motion for a temporary restraining order (ECF No. 11), motion for a preliminary injunction (ECF No. 13), and motion for free copies (ECF No. 15).

## Discussion

### I.   Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan.  The events about which he complains occurred at that facility.   Plaintiff sues the following MCF officials: Corrections Officer Unknown Stevens and Warden James Schiebner.

In Plaintiff's amended complaint, he states that on August 23, 2021, he was acting as a trustee of the Thomas Family Trust and was engaged in "administrative duties of [the] Trust," including "drafting a Managerial Trust Agreement . . . for the management and effectuation of present/future financial interest[] and appurtenance rights of the Thomas Family Trust." (Am. Compl., ECF No. 7-1, PageID.41.)  While Plaintiff was working on "said trust administration," he was interrupted by Defendant Stevens[3] who ordered Plaintiff and his cellmate to exit the cell and to go

---

amend once as a matter of course before a responsive pleading is served. *See* Fed. R. Civ. P. 15(a). Plaintiff has not previously amended his complaint and no responsive pleadings have been filed in this action. Accordingly, Plaintiff's motion will be granted, and his attached proposed amended complaint (ECF No. 7-1) will be docketed as his amended complaint.

[3] In the body of Plaintiff's amended complaint, Plaintiff identifies Defendant Stevens as "Defendant" and does not list his last name. Plaintiff identified Defendant Stevens in this manner in the body of his original complaint when Defendant Stevens was the sole Defendant. (*See generally* Compl., ECF No. 1.) Because the allegations in the

to the housing unit dayroom. (*Id.*) Before Plaintiff went to the dayroom, Plaintiff informed Defendant Stevens "of the private nature of the legal documents/property" in the cell and advised him that "if there was going to be a search of 'any' of that material, Plaintiff needed to be present." (*Id.*) Defendant Stevens "dismissed Plaintiff[']s protest, and then repeated the initial order." (*Id.*) Plaintiff complied with Defendant Stevens's order. (*Id.*, PageID.42.)

Subsequently, after Defendant Stevens "engag[ed] [in] a formal cell/room search (shake-down)," Sergeant Brown and an unnamed correctional officer, both of whom are not parties to this action, escorted Plaintiff to the temporary administrative segregation housing unit. (*Id.*) Approximately three hours later, Plaintiff was released from that unit and returned to his cell. (*Id.*) When Plaintiff arrived back at his cell, Plaintiff noticed that "'all' legal documents/property relative to Plaintiff[']s criminal/civil proceedings i.e. trial-transcripts, copies of filed civil rights complaints, dispositive motions, etc.[] were thrown, scattered, ripped, and stepped-on throughout Plaintiff[']s cell/room." (*Id.*) Upon further examination, "Plaintiff discovered that the Trust Agreement" and the "'semi' drafted Management Trust Agreement," both of which were on Plaintiff's desk prior to being ordered out of the cell by Defendant Stevens, were missing. (*Id.*) Additionally, "[c]opies of 'all' legal documents" related to civil action nos. 1:20-cv-938 and 1:21-cv-296 were missing. (*Id.*) After sorting through the remaining documents in his cell, Plaintiff found an "'odd'

---

amended complaint are nearly identical to the allegations in the original complaint, it is clear that Plaintiff's reference to "Defendant" in the body of his amended complaint is a reference to Defendant Stevens.

note left behind by Defendant [Stevens]," which stated, "Negroes can't make agreements, 'we' own everything! MDOC w/ love!" (*Id.*)

Subsequently, on October 25, 2021, civil action no. 1:21-cv-296, which named state officials S. Burt, E. Hardiman, and P. Mercer as Defendants, was dismissed by this Court. (*See id.*, PageID.41–42.)  Plaintiff alleges that he "was unable to file a Rule 52 or 59 motion under [the] Federal Rules of Civil Procedure, and was 'forced' to file a 'notice of appeal' as a result of not having the primary legal documents/property required for 'meaningful' litigation." (*Id.*, PageID.42 (emphasis omitted).) Thereafter, on November 24, 2021, "Plaintiff was 'forced' to settle the civil rights action that was pending against state official Tim Antes [(1:20-cv-938)] as a result of not having the primary legal documents . . . required for 'meaningful' litigation." (*Id.*, PageID.41–42.)  Plaintiff also contends that he "could not perform the administrative (Fiduciary) duties pursuant to the . . . Thomas Family Trust agreement/instrument" or "pursue 'valuable investment opportunities for Trust assets[] and 'effective management' via a trust conduit (Thomas Family Management Trust)." (*Id.*, PageID.42.)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his "rights under 42 U.S.C. §§[] 1981, 1982, 1985(3)." (*Id.*, PageID.43.)  Plaintiff also avers that Defendants intentionally interfered "with contractual relations" and interfered "with prospective business relations (under Michigan State Law)" in violation of "18 U.S.C. §[§] 1961–1968." (*Id.* (parentheses in original).)  Further, Plaintiff alleges that Defendants' actions violated: his right "to make a contract"

under the Fourteenth Amendment and the "Privileges or Immunities Clause;" his right to "'meaningful' access to the courts under the Due Process, Equal Protection, and Privileges and/or Immunities Clauses of the [Fourteenth] Amendment;" the "Privileges and Immunities Clause of Article 4 and the [Thirteenth] Amendment (involuntary [s]ervitude);" his right to be free from retaliation under the First Amendment; and the "Fifth [] Amendment[] 'Takings Clause.'"  (*Id.* (parentheses in original).)  As relief, Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief, on behalf of himself and the Thomas Family Trust. (*Id.*, PageID.43–44.)

## II.  Plaintiff's Pending Motions

In addition to filing a motion to file an amended complaint, Plaintiff also filed (i) a motion for a temporary restraining order (ECF No. 11); (ii) a motion for a preliminary injunction (ECF No. 13); and (iii) a motion requesting free copies (ECF No. 15).

### A.  Motion for a Temporary Restraining Order & Motion for a Preliminary Injunction

In Plaintiff's motion for a temporary restraining order, he requests that the Court enter an order to "restrain" Defendants from "[i]mpairing the obligation of [c]ontract (Administration of Trust);" "[i]nvoluntary [s]ervitude;" and "[s]uppression of First Amendment right[s]."  (ECF No. 11, PageID.73.)  In Plaintiff's motion for a preliminary injunction, he does not specifically set forth his requested relief, and instead, directs the Court to the requested relief and supporting arguments set forth in his motion for a temporary restraining order.  (*See* ECF No. 13, PageID.82–83.)

7

The purpose of a temporary restraining order and/or a preliminary injunction is to preserve the status quo until a trial on the merits.  *S. Glazer's Distribs. of Ohio L.L.C. v. Great Lake Brewing Co.*, 860 F.3d 844, 848 (6th Cir. 2017) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1982)).  As set forth herein, the Court concludes that the action is properly dismissed.  Therefore, the Court will deny Plaintiff's motion for a temporary restraining order and motion for a preliminary injunction as moot.  *See Daunt v. Benson*, 956 F.3d 396, 421–22 (6th Cir. 2020) ("[A] court must not issue a preliminary injunction where the movant presents no likelihood of merits success.").

## B.    Motion Requesting Free Copies

In Plaintiff's motion requesting free copies of documents that he filed in this case, he argues that he "qualif[ies] to receive [the] requested copies . . . free of charge" because he is indigent and was granted leave to proceed *in forma pauperis* in this action.  (ECF No. 15, PageID.90.)

It is well-settled that litigants generally bear their own litigation expenses. *Smith v. Yarrow*, 78 F. App'x 529, 544 (6th Cir. 2003); *Tabron v. Grace*, 6 F.3d 147, 159 (3d Cir. 1993); *Kirk v. Simpson*, No. 93-5668, 1994 WL 443461, at *2 (6th Cir. Aug. 15, 1994) (citing *Moss v. Thomas*, 299 F.2d 729 (6th Cir. 1962)) (discussing that the constitutional right of access to the courts does not encompass a constitutional requirement to waive costs of transcripts, expert witness fees, and fees to secure depositions); *see also Johnson v. Hubbard*, 698 F.2d 286, 289 (6th Cir. 1983) ("Witness fees clearly fall in the category of items such as trial transcripts, depositions and other documents, which the constitution does not require a court, or in practical

8

terms, the federal government, to pay for at the request of the indigent party."). Further, § 1915(b) "makes no provision for the payment by the government of the costs of transcripts, or any other litigation expenses, and no other statute authorizes courts to commit federal monies for payment of the necessary expenses in a civil suit brought by an indigent litigant." *Tabron*, 6 F.3d at 159. The Court therefore will deny Plaintiff's request for free copies.

## III. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is

entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Defendant Schiebner

In Plaintiff's amended complaint, he names Warden Schiebner as a Defendant; however, Plaintiff fails to name Defendant Schiebner in the body of his amended complaint.  It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where

the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).  Here, Plaintiff's claims fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal.  Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Furthermore, to the extent that Plaintiff intended to hold Defendant Schiebner liable for the actions of his subordinates, government officials, such as Defendant, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendant Schiebner engaged in any active unconstitutional behavior.  Accordingly, for these reasons, Plaintiff fails to state a claim against Defendant Schiebner.

### B.   Access to the Courts—First Amendment & Due Process

Plaintiff alleges that Defendant Stevens's actions in searching Plaintiff's cell, which Plaintiff contends resulted in the loss of some of his legal property, interfered with his right of access to the courts.  (*See* Am. Compl., ECF No. 7-1, PageID.43.)

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments.  *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Prison officials have a two-fold duty to protect a prisoner's right of access to the courts.  *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995).  First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration.  *Id.* (citing *Bounds*, 430 U.S. at 824–28).  Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts.  *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation.  *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.  In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently

hindering, his efforts to pursue a non-frivolous legal claim.  *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  The United States Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355.  "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).  Moreover, the underlying action must have asserted a non-frivolous claim.  *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3).  "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."  *Id.* at 415.

Here, Plaintiff alleges that following Defendant Stevens's search of Plaintiff's cell on August 23, 2021, Plaintiff noticed that "'all' legal documents/property relative to Plaintiff[']s criminal/civil proceedings i.e. trial-transcripts, copies of filed civil rights complaints, dispositive motions, etc.[] were thrown, scattered, ripped, and stepped-on throughout Plaintiff[']s cell/room." (Am. Compl., ECF No. 7-1, PageID.42.) Further, "Plaintiff discovered that the Trust Agreement," the "'semi' drafted Management Trust Agreement," and "[c]opies of 'all' legal documents" related to civil action nos. 1:20-cv-938 and 1:21-cv-296 were missing. (*Id.*) Subsequently, after civil action no. 1:21-cv-296 was dismissed by this Court on October 25, 2021, Plaintiff claims that he "was unable to file a Rule 52 or 59 motion under [the] Federal Rules of Civil Procedure, and was 'forced' to file a 'notice of appeal' as a result of not having the primary legal documents/property required for 'meaningful' litigation." (*Id.*, PageID.41–42 (emphasis omitted).) Further, Plaintiff contends that on November 24, 2021, "Plaintiff was 'forced' to settle the civil rights action that was pending against state official Tim Antes [(1:20-cv-938)] as a result of not having the primary legal documents property required for 'meaningful' litigation." (*Id.*)

As an initial matter, Plaintiff's assertion that "'all' legal documents/property relative to Plaintiff[']s criminal/civil proceedings i.e. trial-transcripts, copies of filed civil rights complaints, dispositive motions, etc.[] were thrown, scattered, ripped, and stepped-on throughout Plaintiff[']s cell/room" is insufficient to  state an access to the courts claim because he fails to allege any facts to show that the general disarray in Plaintiff's cell resulted in Plaintiff suffering an actual injury to any underlying non-

frivolous action.  (*Id.*, PageID.42.)  Likewise, Plaintiff's assertion that he lost "the Trust Agreement" and the "'semi' drafted Management Trust Agreement" for the Thomas Family Trust also fails to state an access to the courts claim because he again fails to allege any facts to show that he suffered an actual injury or that any related underlying litigation was non-frivolous.  (*See id.*)

However, the two underlying actions referenced by Plaintiff—civil action nos. 1:20-cv-938 and 1:21-cv-296, both of which Plaintiff filed in this Court—are civil rights actions filed pursuant to 42 U.S.C. § 1983, and as such, these actions are the types of cases for which there can be an actual injury.  *See Thaddeus-X*, 175 F.3d at 391.

As to civil action no. 1:21-cv-296, the Court dismissed this action with prejudice on preliminary screening, pursuant to 28 U.S.C. §§ 1915(e) and 1915A, and 42 U.S.C. § 1997e(c), due to Plaintiff's failure to state a claim upon which relief may be granted. *See Thomas v. Burt*, No. 1:21-cv-296, 2021 WL 4947176 (W.D. Mich. Oct. 25, 2021). When dismissing this action, the Court certified that "an appeal would not be taken in good faith," explaining that "[f]or the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous."  *Id.* at *11 (citation omitted). Under these circumstances, Plaintiff fails to show that the claims asserted in civil action no. 1:21-cv-296 were non-frivolous.  As such, Plaintiff is unable to show an actual injury with respect to civil action no. 1:21-cv-296, and he, therefore, fails to state an access to the courts claim as to this action.

With respect to civil action no. 1:20-cv-938, Plaintiff does not specifically allege that his claims in civil action no. 1:20-cv-938 were non-frivolous; however, upon review of that action's docket, Plaintiff's First Amendment retaliation claim survived preliminary screening, and the case was dismissed because the parties reached a settlement.   Therefore, although Plaintiff has not alleged sufficient facts to demonstrate that the underlying claims in civil action no. 1:20-cv-938 were non-frivolous, at this stage of the proceedings, the Court determines that the claims Plaintiff raised in this underlying action were not clearly frivolous.

However, Plaintiff has provided very little information about the missing legal documents.   Plaintiff claims that on November 24, 2021, "Plaintiff was 'forced' to settle the civil rights action that was pending against state official Tim Antes [(1:20-cv-938)] as a result of not having the primary legal documents property required for 'meaningful' litigation."  (Am. Compl., ECF No. 7-1, PageID.41–42.)  The amended complaint, however, does not explain why the loss of the documents impeded the litigation.  The action's docket reflects that when the parties reached a settlement on November 24, 2021, the parties had an upcoming deadline of December 17, 2021, to submit dispositive motions.  *See* Order, *Thomas v. Antes*, No. 1:20-cv-938 (W.D. Mich. Nov. 10, 2021), (ECF No. 29).   Before that deadline and before settling the case, Plaintiff could have advised the Court in civil action no. 1:20-cv-938 that he no longer had his "primary legal documents," all of which Plaintiff had presumably previously filed with the Court, and requested copies of such documents from the Court. However, the action's docket reflects that Plaintiff did not submit any such filings to

the Court.  Although Plaintiff may now wish that he had not settled the case with the defendant, besides Plaintiff's conclusory assertion that he was "forced" to settle the case, Plaintiff has failed to explain *how* the loss of the documents "forced" this settlement.  Plaintiff therefore has failed to explain how the loss of the documents specifically frustrated his litigation.  Consequently, Plaintiff fails to allege sufficient facts to show that he suffered an actual injury.

Therefore, because Plaintiff fails to allege that he suffered an actual injury to non-frivolous actions, his allegations fail to state an access to the courts claim. Accordingly, the Court will dismiss this claim.

### C.    First Amendment Retaliation

Plaintiff alleges that Defendant Stevens violated his First Amendment rights by retaliating against him.  Specifically, Plaintiff contends that Defendant Stevens's actions "constituted 'adverse reprisal' for Plaintiff[] and [the] Thomas Family Trust[']s free exercise of undisputed First Amendment rights." (Am. Compl., ECF No. 7-1, PageID.43.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the

defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.    Protected Conduct

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral.  *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance).  "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form."  *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (quoting *Pearson*, 471 F.3d at 741) (finding that a conversation constituted protected petitioning activity).

However, "[a]busive or manipulative use of a grievance system would not be protected conduct," *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012), and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir.

2002).  As the Supreme Court held in *Lewis v. Casey*, "[d]epriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions."  *Lewis*, 518 U.S. at 353 n.3.

With respect to what constitutes a frivolous grievance, the Sixth Circuit in *Maben v. Thelen* stated that "[s]ome cases in this Circuit appear to suggest that a prisoner's grievance is frivolous when the underlying grievance itself is *de minimis*." *Maben*, 887 F.3d at 264–65 (collecting cases).  For example, the Sixth Circuit found "a grievance frivolous when the prisoner complained that the prison officer should 'not be able to conduct a non-invasive pat-down search' of her" *Id.* (quoting *Ziegler v. State of Michigan*, 90 Fed. Appx. 808, 810 (6th Cir. 2004)).

In this action, Plaintiff alleges that after Defendant Stevens ordered Plaintiff and his cellmate to go to the dayroom, Plaintiff informed Defendant Stevens "of the private nature of the legal documents/property" in the cell and advised that "if there was going to be a search of 'any' of that material, Plaintiff needed to be present."  (Am. Compl., ECF No. 7-1, PageID.41.)   Plaintiff contends that Defendant Stevens "dismissed Plaintiff[']s protest, and then repeated the initial order."  (*Id.*)

With respect to Plaintiff's request to be present during the search of his cell, a prisoner, such as Plaintiff, has no reasonable expectation of privacy in his cell. *See Hudson v. Palmer,* 468 U.S. 517, 527–28 (1984).  The reasoning in *Hudson* also applies to a prisoner's legal materials.  *See Hubbard v. Mann*, No. 2:21-CV-55, 2021 WL 2845099, at *9 (W.D. Mich. July 8, 2021) (citations omitted); *see also Thomas v. Kramer*, No. 2:08-CV-0544, 2009 WL 937272 at *2 (E.D. Calif., April 7, 2009) (finding

"no Fourth Amendment violation when inmate not present during search of legal materials"); *cf. Bell v. Wolfish*, 441 U.S. 520, 555–57 (1979) (discussing that searches of pretrial detainees' cells outside of the presence of the detainees did not violate the Fourth Amendment).  Although Plaintiff advised Defendant Stevens that he wished to be present during the search of his cell, Defendant Stevens was not required to acquiesce to Plaintiff's request.  Thus, Plaintiff is unable to show that his verbal request to Defendant Stevens was not frivolous because Defendant Stevens was not required to search the cell in Plaintiff's presence.  As such, Plaintiff is unable to show that he engaged in protected conduct.

## 2.    Adverse Action

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights.  *Thaddeus-X*, 175 F.3d at 396.  The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence.  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).  The Sixth Circuit has held that "a retaliatory cell search" and the "seizure of an inmate's legal documents" may constitute adverse action.   *Id.* at 604–05 (citations omitted).  As such, at this stage of the proceedings, the Court assumes, without deciding, that Defendant Stevens's search of Plaintiff's cell during which he allegedly took Plaintiff's legal and personal documents constitutes an adverse action.

### 3.   Retaliatory Motive

To satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.   In this action, Plaintiff merely alleges the ultimate fact of retaliation; however, he alleges no facts from which to reasonably infer that Defendant Stevens was motivated by any protected conduct.   Plaintiff's allegations against Defendant Stevens rest entirely on a conclusory allegation of temporal proximity—that he verbally complained to Defendant Stevens about his need to be present if his cell was searched around the time that Defendant Stevens took an adverse action against him.

Although, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the Sixth Circuit, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim.   *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, No. 19-1837 (6th Cir. Mar. 10, 2020) (unpublished) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive).

Here, Defendant Stevens had advised Plaintiff that he would be conducting the cell search *before* Plaintiff told Defendant Stevens that he needed to be present during the search due to "the private nature of the legal documents/property" in Plaintiff's cell. (Am. Compl., ECF No. 7-1, PageID.41.)  Although Plaintiff then alleges that after telling Defendant Stevens that he needed to be present during the search, his cell was searched, and documents were missing following the search of his cell— suggesting temporal proximity between the two events—Plaintiff fails to allege any other facts to suggest that Defendant acted with a retaliatory motive.  Under these circumstances, the suggestion of temporal proximity alone is insufficient to show a retaliatory motive.  *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987) ("[A]lleging merely the ultimate fact of retaliation is insufficient.").   Furthermore, such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)).   Therefore, even assuming that Plaintiff had alleged sufficient facts to show that he engaged in protected conduct, because Plaintiff fails to allege any facts to suggest that Defendant Stevens was motivated by Plaintiff's protected conduct, Plaintiff fails to state a First Amendment retaliation claim against Defendant.

Accordingly, for all of the reasons set forth above, Plaintiff's First Amendment retaliation claim will be dismissed.

### D.    Fourteenth Amendment Equal Protection Clause

Plaintiff vaguely alleges that Defendant Stevens's actions violated the Equal Protection Clause of the Fourteenth Amendment.   (Am. Compl., ECF No. 7-1, PageID.43.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right," such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest."  *City of Cleburne*, 473 U.S. at 440.  However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ."  *Price v. Johnston*, 334 U.S. 266, 285 (1948).  "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him.  *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).  Such discriminatory purpose must be a motivating factor in the actions of the defendants.  *Id.* at 265–66.  "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."  *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011) (citing *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008)).

Here, when describing the creation of the Thomas Family Trust, Plaintiff states that he and "the Thomas Family Trust beneficiar[ies] are direct descend[a]nts/descend[a]nts of African slaves (protected class)."  (Am. Compl., ECF No. 7-1, PageID.41.)  Based on Plaintiff's reference to his membership in a protected class, although not specifically alleged by Plaintiff, it appears that Plaintiff intended to allege that Defendant Stevens discriminated against him on the basis of his race.  (*See id.*, PageID.41, 43.)

However, Plaintiff's allegations of discriminatory treatment are wholly conclusory.  Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Plaintiff fails to allege sufficient facts to support a claim of intentional race discrimination by either direct or indirect evidence.  *See Davis v. Prison Health Servs.*, 679 F.3d 433, 440 (6th Cir. 2012) (discussing the distinction

between direct and indirect methods of proving discrimination).  First, Plaintiff fails to allege any facts constituting direct evidence of discriminatory motive or purpose. *See Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011) ("[D]irect evidence of discrimination does not require a fact-finder to draw any inferences in order to conclude that the challenged . . . action was motivated at least in part by prejudice against members of the protected group." (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003))); *see also Tibbs v. Calvary United Methodist Church*, 505 F. App'x 508, 512 (6th Cir. 2012) (discussing that "[d]irect evidence is composed of only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor" (citation omitted)); *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 239 (6th Cir. 2005) ("Isolated and ambiguous comments are insufficient to support a finding of direct discrimination." (citation omitted)).  Second, Plaintiff fails to allege a *prima facie* claim under the indirect, burden-shifting framework of *McDonnell Douglas*, 411 U.S. 792, because he fails to allege that other inmates who were not members of the protected were treated differently and were similarly situated in all relevant respects. *See Umani*, 432 F. App'x at 458.

To be a similarly situated member of another class, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the[] [decisionmaker's] treatment of them for it.'" *Umani*, 432 F. App'x at 460 (quoting

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).  In this action, Plaintiff fails to identify any comparative prisoners.  Indeed, besides Plaintiff's vague reference to his membership in a protected class and his conclusory assertion that Defendant Stevens's actions violated the Equal Protection Clause, Plaintiff's amended complaint contains no facts or allegations to support his equal protection claim.  *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").

Moreover, to the extent that Plaintiff intended to assert an equal protection claim in a class-of-one case, he fails to state such a claim.  "[T]he hallmark of [a 'class-of-one'] claim is not the allegation that *one individual* was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (alterations in original) (citations omitted); *see Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily." (emphasis in original)).  A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)).  "Unless carefully circumscribed, the concept of a class-of-one

equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Id.* (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" (quoting *Club Italia Soccer & Sports Org., Inc.*, 470 F.3d at 298)). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018).

Even viewing Plaintiff's equal protection claim as a class-of-one claim, Plaintiff's equal protection claims are wholly conclusory. Plaintiff fails to allege any facts to demonstrate that his fellow inmates were similar in all relevant aspects. Plaintiff's conclusory allegations simply do not suffice to state a claim.

Accordingly, for all of the reasons set forth above, the Court will dismiss Plaintiff's Fourteenth Amendment equal protection claim.

### E.      42 U.S.C. §§ 1981, 1982, 1985(3)

Without providing any further explanation, Plaintiff alleges that Defendant Stevens's actions violated his rights under 42 U.S.C. §§ 1981, 1982, 1985(3).  (Am. Compl., ECF No. 7-1, PageID.43.)

#### 1.      42 U.S.C. § 1981

Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors and provides a cause of action for race-based employment discrimination.  *See* 42 U.S.C. § 1981.  In *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989), the Supreme Court held that § 1981 does not itself provide a remedy against state actors.  *Id.* at 731. Plaintiff's claims are against a state actor.  And, regardless, Plaintiff fails to allege any *facts* showing that he was involved in the making or enforcing of contracts between public and private actors or that he faced race-based employment discrimination. Plaintiff therefore fails to state a claim under § 1981.

#### 2.      42 U.S.C. § 1982

Pursuant to § 1982, "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."  42 U.S.C. § 1982. Plaintiff does not present any allegations suggesting that he was involved in purchasing, leasing, selling, or conveying real or personal property.  Indeed, Plaintiff

fails to allege any facts to support this claim.  Accordingly, Plaintiff's § 1982 claim will be dismissed.

### 3.    42 U.S.C. § 1985(3)

To maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3), a plaintiff must establish the following four elements: (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.  *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998).  Moreover, the plaintiff must allege that there existed "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *See Kush v. Rutledge*, 460 U.S. 719, 726 (1983); *see also Collyer*, 98 F.3d at 233.

Here, Plaintiff alleges that when he returned to his cell following Defendant Stevens's search of the cell, there was an "'odd' note," which Plaintiff believes Defendant Stevens left, stating: "Negroes can't make agreements, 'we' own everything! MDOC w/ love!"  (Am. Compl., ECF No. 7-1, PageID.42.)  Besides this vague allegation, Plaintiff fails to allege any facts regarding the existence of a conspiracy.  Plaintiff's vague and conclusory allegations are insufficient to maintain his conspiracy claim against Defendants.  *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987) (noting that "conspiracy claims must be pled with some degree of specificity" and that "vague and conclusory allegations unsupported by

material facts will not be sufficient to state a claim"); *see also Siefert v. Hamilton Cnty.*, 951 F.3d 753, 768 (6th Cir. 2020) (noting that a plaintiff must set forth facts alleging that defendants agreed to violate the plaintiff's rights and committed an overt act in furtherance of that agreement).  Therefore, Plaintiff's claim under § 1985(3) will be dismissed.

### F.    Racketeer Influence and Corrupt Organizations Act (RICO)

Plaintiff alleges that Defendant Stevens intentionally interfered "with contractual relations" and interfered "with prospective business relations" in violation of "18 U.S.C. §[§] 1961–1968." (Am. Compl., ECF No. 7-1, PageID.43.)

Section 1964(c) of RICO, the provision upon which Plaintiff's claim is presumably based, provides for a private cause of action:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c) (1982).  Section 1962 makes it illegal to engage in a pattern of racketeering activity. 18 U.S.C. § 1962(c) (1982).  "Racketeering activity" is defined in section 1961(1) in terms of a long list of federal and state crimes, including mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343.  A "pattern of racketeering activity" requires at least two acts of racketeering activity within a ten-year period, 18 U.S.C. 1961(5), generally referred to as the "predicate acts" or "predicate offenses" underlying the RICO claim.

The Sixth Circuit and other federal courts consistently have rejected RICO claims concerning prison conditions.  *See, e.g.*, *Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) (affirming dismissal of conclusory RICO claim because plaintiff alleged no injury to his business or property); *Looper v. Gibson*, 63 F. App'x 877, 878 (6th Cir. 2003) (same); *Ziegler v. McGinnis*, 32 F. App'x 697, 699 (6th Cir. 2002) (finding no RICO claim based on MDOC telephone policy); *Hyland v. Martin*, No. 00-1269, 2000 WL 1647952, at *1 (6th Cir. Oct. 25, 2000) (affirming dismissal of prisoner RICO conspiracy claim regarding restrictions imposed on photocopying credit card); *see also Jenkins v. C.S.C./C.C.C.F. Corr. Services Corp.*, No. 99-1518, 2000 WL 1179772, at *1 (10th Cir. Aug. 21, 2000) (dismissing prisoner RICO claim alleging embezzlement from inmate accounts); *Petersen v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) (affirming dismissal of RICO claims alleging warden accepted bribes from prison food services company); *Taylor v. Ornoski*, 2006 WL 1646148 (N.D. Cal. June 14, 2006) (dismissing prisoner RICO claims seeking to challenge regulations restricting vendors who provide telephone service to inmates).

Plaintiff's conclusory allegations fail to identify predicate acts upon which to base a RICO claim.  *See Iqbal*, 556 U.S. at 678–79 (requiring more than conclusory labels); *Twombly*, 550 U.S. at 555 (same).  Moreover, Plaintiff's RICO claim fails to state a claim for relief because he does not demonstrate any injury to business or property, which is a prerequisite to a successful civil RICO claim.  *See* 18 U.S.C. § 1964(c); *Ziegler*, 32 F.  App'x at 699; *see also Lee*, 104 F. App'x at 493; *Looper*, 63 F. App'x at 878.  Accordingly, Plaintiff's RICO claim will be dismissed.

### G.    Interference with Right to Contract

Plaintiff vaguely alleges that Defendant Stevens violated Plaintiff's right "to make a contract" under the Fourteenth Amendment.  (Am. Compl., ECF No. 7-1, PageID.43.)

As an initial matter, Plaintiff does not have an absolute right to enter into contracts under the Fourteenth Amendment.  *See, e.g.*, *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 391–93 (1937).  The government may impose "reasonable regulations" on the freedom to contract "in the interests of the community."  *Id.* at 392 (citation omitted).  Further, in the prison context, courts have held that "it is reasonable for prisons to regulate how inmates engage in business and to limit their ability to enter contracts with members of the public."  *See, e.g.*, *Taliaferro v. Hepp*, No. 12–cv–921–BBC, 2013 WL 936609, at *7 (W.D. Wisc. Mar. 11, 2013) (citing *King v. Fed. Bureau of Prisons*, 415 F.3d 634, 636 (7th Cir. 2005); *French v. Butterworth*, 614 F.2d 23, 24 (1st Cir. 1980); *Garland v. Polley*, 594 F.2d 1220, 1221–22 (8th Cir. 1979)).

Moreover, Plaintiff utterly fails to allege that he suffered any specific impairment to a contract. Indeed, his claim is wholly conclusory.  As previously discussed, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.  Accordingly, Plaintiff's claim regarding the interference with his right to make a contract under the Fourteenth Amendment will be dismissed.

**H.      Fourteenth Amendment Privileges or Immunities Clause**

Plaintiff makes a conclusory assertion that Defendant Stevens's actions violated the Privileges or Immunities Clause of the Fourteenth Amendment. (Am. Compl., ECF No. 7-1, PageID.43.)

The Privileges or Immunities Clause of the Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." U.S. Const. amend. XIV, § 1. "[T]he privileges or immunities of national citizenship to which [the clause] refers have been construed narrowly, extending to the right to petition Congress, to vote for national officers, to enter public lands, to be protected against violence while in the custody of a United States Marshal[], and to inform federal authorities of the violation of federal law." *Snyder v. Smith*, 7 F. Supp. 3d 842, 857 (S.D. Ind. 2014) (citing *Murphy v. Mount Carmel High Sch.*, 543 F.2d 1189, 1192 n.2 (7th Cir. 1976); *Saenz v. Roe*, 526 U.S. 489, 502 (1999)); *see also Slaughter–House Cases*, 83 U.S. 36 (1872).

Plaintiff fails to allege any facts describing how Defendant Stevens violated his rights under the Privileges or Immunities Clause of the Fourteenth Amendment, much less any facts suggesting that Defendant Stevens's alleged actions had any bearing on Plaintiff's national citizenship rights. Accordingly, Plaintiff fails to state a claim under the Privileges or Immunities Clause of the Fourteenth Amendment, and this claim will be dismissed.

## I.      Article IV Privileges & Immunities Clause

Plaintiff also alleges that Defendant Stevens's actions violated the Privileges and Immunities Clause of Article IV, section 2 of the United States Constitution; however, Plaintiff provides no explanation or facts to support this allegation.  (Am. Compl., ECF No. 7-1, PageID.43.)

The first sentence of the Privileges and Immunities Clause of Article IV provides:

> The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.

U.S. Const., Art. IV, § 2. The Supreme Court has recognized that the Clause entitles the "citizen of one State who travels in other States, intending to return home at the end of his journey . . . to enjoy the 'Privileges and Immunities of Citizens in the several States' that he visits." *Saenz*, 526 U.S. at 501 (citing *Paul v. Virginia*, 8 Wall. 168, 180 (1868)).  The protection, however, is not absolute and bars only discrimination based on the person's state citizenship.  *Id.* at 501–02.

Plaintiff fails to allege discrimination based on his state of citizenship and fails to allege any other facts that would fall within the concerns of the Privileges and Immunities Clause.  His claim therefore will be dismissed.

## J.      Thirteenth Amendment

Plaintiff makes a conclusory reference to "involuntary [s]ervitude" and alleges that Defendant Stevens's actions violated the Thirteenth Amendment.  (Am. Compl., ECF No. 7-1, PageID.43.)

The Thirteenth Amendment provides, in pertinent part: "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1.  As set forth specifically in the Thirteenth Amendment, the Amendment does not apply to persons "duly convicted" of a crime. *See Pischke v. Litscher*, 178 F.3d 497, 500 (7th Cir. 1999) ("The Thirteenth Amendment, which forbids involuntary servitude, has an express exception for persons imprisoned pursuant to conviction for crime.").  Plaintiff does not allege that he was not "duly convicted."  Further, the MDOC's Offender Tracking Information System (OTIS), indicates that Plaintiff is currently serving sentences for four convictions, and his earliest possible release date is November 7, 2027.  *See* OTIS, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?  mdocNumber=254903  (last visited July 29, 2022).  Plaintiff therefore fails to state a claim under the Thirteenth Amendment.

### K.    Fifth Amendment Takings Clause

Plaintiff also contends that Defendant Stevens's actions violated the Takings Clause of the Fifth Amendment.  (Am. Compl., ECF No. 7-1, ECF No. 43.)  Plaintiff does not provide any further explanation for this claim; however, presumably, Plaintiff believes that Defendant Stevens violated Plaintiff's rights under the Takings Clause when Defendant Stevens allegedly took Plaintiff's legal and personal documents following the search of Plaintiff's cell.

> The Takings Clause of the Fifth Amendment of the United States Constitution, made applicable to the States through the Fourteenth Amendment, *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 239, 17 S. Ct. 581, 585, 41 L. Ed. 979 (1897), provides: "[N]or shall private property be taken for public use, without just compensation." One of the principal purposes of the Takings Clause is "to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49, 80 S. Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960).

*Dolan v. City of Tigard*, 512 U.S. 374, 383–84 (1994) (footnote omitted). "A prisoner property claim only implicates the Fifth Amendment Takings Clause where the prisoner alleges that prison officials took his personal property and converted it for public use without just compensation." *Roop v. Ryan*, No. CV 12-0270-PHX-RCB, 2012 WL 1068637 at *3 (D. Ariz. March 29, 2012). Seizure of convicted prisoners and their personal property are not the kinds of takings that are prohibited by the Fifth Amendment. *See, e.g.*, *Paalan v. United States*, 120 F. App'x 817, 822–823 (Fed. Cir. 2005) ("[N]either the seizure of items of evidentiary value nor the retention of personal property that [the prisoner-plaintiff] was not allowed to retain during his incarceration constituted takings for which the government was required to pay just compensation."); *Allen v. Wood*, 970 F. Supp. 824, 831 (E.D. Wash. 1997) (holding that a prisoner cannot state a Fifth Amendment claim for rejection of his mail where he "fails to show that property he was authorized to receive was taken for public use"); *Hines v. Ferguson*, No. 19-CV-3139, 2019 WL 3504239 at *1 (E.D. Pa. July 31, 2019) (concluding that allegations related to the destruction of inmate property during the transfer of prisoners do not implicate the Fifth Amendment Takings Clause where nothing in the complaint suggests the prisoner's property was taken for a public purpose).

36

Here, Plaintiff does not allege that Defendant Stevens took his legal and personal documents and converted them for public use without just compensation. Defendant Stevens's alleged removal of Plaintiff's documents from his cell therefore does not implicate the protections of the Takings Clause. Accordingly, Plaintiff's Fifth Amendment Takings Clause claim will be dismissed.

### L.     State Law Claims

In addition to the above-discussed federal claims, it appears that Plaintiff may have intended to raise state law claims in his amended complaint. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Any assertion that Defendants violated state law or the MDOC's policies therefore fails to state a claim under § 1983.

Moreover, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc.*

*v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Because Plaintiff's federal claims against Defendants will be dismissed, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendants.   Therefore, Plaintiff's state law claims against Defendants will be dismissed without prejudice to Plaintiff's ability to bring those claims in the state courts.

## Conclusion

Upon review, Plaintiff's motion to file an amended complaint (ECF No. 7) will be granted and his proposed amended complaint (ECF No. 7-1) will be docketed as an amended complaint.  Plaintiff's motion for a temporary restraining order (ECF No. 11), motion for a preliminary injunction (ECF No. 13), and motion for free copies (ECF No. 15) will be denied.

Further, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's amended complaint will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).   *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.

Dated:  __August 16, 2022__     __/s/ Phillip J. Green__
                              PHILLIP J. GREEN
                              United States Magistrate Judge